Good morning, Your Honors. Peter Sklaru, Department of Justice, Tax Division. There are three issues at bar, and the first we addressed in our brief, which is not necessarily the one that has to be decided first, is rightness. And I submit that a worry about what might happen in the future by a creditor that has not yet happened and may never happen is not injury in fact for standing and is not justiciable for rightness. Anxiety does not make something justiciable. But even after discharge, if the IRS, as often happens in fact in the vast majority of cases, never resumes collection, there is no right case of controversy if the parties are not yet adverse. And to force the IRS into an early investigation is problematic for us. The first kinds of discharges or exceptions are very simple. They're look-back periods. How many years ago did you file your return? That kind of a thing. The willful evasion exception to discharge is very fact-intensive, and the wording of the statute is identical to the criminal tax evasion statute. So essentially, you're forcing the IRS into what could be tantamount on a civil standard of a criminal-type investigation early on before they want to do that and may never take that up and may never do that. And the cases, they're actually interrelated a little bit, the issues, excuse me. Let me just ask, if we were to accept your rightness determination, and I think I understand it, it would apply more broadly than just to tax cases, right? I mean, could you walk us through what its potential applications might be in torts, for instance? Yes, it could apply more broadly, and that's why I said you don't necessarily have to decide the issue because the declaratory judgment issue is limited to tax cases. So that is an alternative way to go here. Right. But if we were focused on rightness. If you focus on rightness and you argue that or determine that a case is not right before discharge, then it means that in most other cases where there are other kinds of debts, other than the three, there are three kinds of debts that are required to bring pre-discharge complaints in order to preserve the exception. And those are unique, and they do actually make up the vast majority of debts and private debts in the United States, those three exceptions. But the other ones of the 15 or 18 or 19 exceptions to discharge which are self-effectuating would all fall under the same rubric. And it would mean that you wait for the discharge in those cases. There might be an exception or a different kind of ruling, and I really think it's not before the Court today for reorganization cases. But in Chapter 7 cases where the discharge comes quickly and there's no particular harm to the debtor in having to wait until that discharge, then I think that it would apply to all other kinds of debts in that — all other kinds of debts other than the three that require an advance ruling. Now, there is an interrelationship between the declaratory judgment act and the rightness issue, which I happened to stumble upon two nights ago, really, in a precedent by this Court, where there was a case where, in reading — re-reading one of the cases cited by my adversaries, it distinguished this case, and I think this case is pretty closely on point. It's Inouye Combustion Equipment Associates. It's at 838 Fed Second 35, and it deals with both rightness and declaratory judgment and dischargeability. It is a dischargeability case regarding a — the EPA, and in that case, this Court decided that — that the declaratory judgment act did apply, 2201, to dischargeability under that case, and found that the case wasn't right after a discharge had already entered for the reorganized debtor. And it found it wasn't right because the EPA had not finished its investigation. And it weighed — it said that when you have declaratory judgment act rightness, you should weigh the burdens, something that was also done in one of the first cases that addressed the issue I have, which is Malinchik, and which is cited in our briefs. The weighing of the burdens in doing that, it said that the debtor having to wait to learn for the — whether the discharge was effective to the tax — excuse me, to the EPA's claim, was not that harmful, but it was far more harmful to force the government agency into an investigation that it was not yet ready to complete or take on. I mean, when you argue about rightness, you say that for a matter to be right, you need the discharge and then some post-collection activity, or at least some indication that the IRS is interested in a fraud matter. I guess I'm wondering why you need the discharge. What if before a petitioner — and I'm just asking you to help me out to understand bankruptcy. What if a petitioner, before a petition is filed, the IRS had made — taken some concrete positions that suggested they might be implicated in a fraud investigation, then the petition is filed, there's no discharge yet, but there are clear indications that they're in controversial, contrary positions? So normally the IRS will not conduct its post-discharge investigation and make this decision if there's not a discharge yet, because sometimes the discharge is denied, or in other chapters the discharge — the plan's not completed and the discharge is never entered. However, there is an exception, so you bring up the two kinds of willfulness. If it's willful evasion of payment, then that would really never occur. They wouldn't make that decision in advance, which is the kind we have here. If it's fraud on a return, you may have a case where the IRS has already alleged fraud on the return, and it could be, for example, pending before the tax court when the bankruptcy is filed. Then the fraud issue is going to be determined as part of the tax anyway, and if there's fraud on the return, it's automatically non-dischargeable. I would note, you know, so the cases where this comes up more importantly for us — actually, let me digress here a moment. It is very important when there's fraud on a return, because we have a case right now pending in the Eastern District of New York called Parsi, where the person wants a discharge for the years 2005 to 2018. And except for 2005 and 2018, there are no assessments. And so it's on — it's on a whole bunch of intervening years in which the IRS has never assessed tax and has — you know, if they're barred forever from raising fraud on the return, they can't come back later, even though fraud is supposed to open the statute of limitations forever for fraud on a return. So that can be a very important problem for the IRS in cutting these off before, you know, when there's — when there's no discharge. I see that I'm almost out of time. And I appreciate your answering our questions, though, so that we can understand your position in this case and in bankruptcy generally. Is it your position that the point at which this became right was when the IRS sued to reduce the debt to judgment? That — I'm sorry, March 14th is the date for — Yes. Yes. Yes, with one qualification, I suppose you could say. Before we filed the complaint, a decision was made at least, I don't know exactly how long before that, but it was well after this complaint — well after Mrs. Goebel filed her complaint that that was done. Well, but then it gets complicated because I gather the government wasn't served with the complaint until March 22nd. That's right. And we had already filed our suit. So the first jurisdictionally proper case with jurisdiction over us as a person, sort of personal jurisdiction, you know, think of it as the United States, was also the district court suit, as well as we believe subject matter jurisdiction and the waiver of sovereign immunity. So let us assume — let me assume for a moment that you're arguing that the IRS suit has priority. It's the first one that's filed. It's first in time. The — what happens to the adversary proceeding then? So normally the — what the Supreme Court has held, and then this court has held in AEP, which is cited in our brief, the — normally, and it's not an irrevocable rule, but normally the second court is supposed to voluntarily stand down and the first is supposed to go forward. Stand down, delay, defer — Abstain. Abstain. I think when bankruptcy in particular — So does that mean when the — let's assume the IRS succeeds and the debt is reduced to judgment, then is there any adversarial proceeding after that to see — to declare whether the tax debts are discharged? No, it becomes — That now goes out of the picture altogether. It becomes moot because of the nature of our claim. We actually pled non-discharge — we pled the exception because we have to. If we don't plead the exception — back before 2010, you didn't have to plead — it was an affirmative defense discharge, and they removed that from the Rule 8. And if you look at the Advisory Committee notes, they said why they didn't want default judgments to be binding on debtors. So we, starting in 2010, after the — after that amendment to the — to the rules, we pleaded. But the answer is the adversary proceeding would become moot. Exactly, Your Honor. Okay. I do would love to reserve a little for rebuttal. So I will — thank you, Your Honors. Thank you.  May it please the Court. Thomas Moores, Mayor of Herbert Smith Freehills Cramer, U.S. LLP, representing Laura Gerbel as appellee and debtor, and with me today is Rachel Blumenfeld, her bankruptcy counsel, who is a solo practitioner with her own office.  I want to deal with some of the questions that were raised of appellant before I get to any further argument. Judge Radji, the legislative history we cite in our brief, and also Section 524 of the Bankruptcy Code, shows there can't be a first-to-file rule. And I don't see — this has not come up. It's not before this Court. But if the IRS were to commence a proceeding, as it did in District Court, 524 would give the Bankruptcy Court the power to show up and say, that's mine. And the legislative history shows it's the Bankruptcy Court that's supposed to make the decision where the case is. Congress worked very deliberately to put in place a statutory framework. So, no, I do not believe the adversarial proceeding would be moved. I believe that would be followed by a Section 524 proceeding where the statute gives explicit authority for the Bankruptcy Court to enforce a discharge. And are you taking that position because you had, in fact, filed the adversarial proceeding even though the government hadn't been served? Or are you taking the position that if they had filed suit to reduce the debt to judgment on March 14th, and you had sought an adversarial proceeding on March 30th, that it still would have been the Bankruptcy Court's decision as to where the case belonged? Yes. And you're relying on which statute for that? Section 524A2 and the legislative history, the detailed legislative history of the Bankruptcy Court, which shows this particular issue was particularly discussed in debate as to which court would have jurisdiction. And the legislative history is very clear. The Bankruptcy Court makes the decision. No, even if its proceeding is initiated after, even long after, the action in the district court? If the bankruptcy case had been closed and it needed to be reopened, it would be a different question. But that's not our situation here. The bankruptcy case is open. The lawsuit was commenced and service was properly affected after the government filed its own lawsuit. But in terms of the summons and complaint, the government has waived an objection to that. They had to raise that early and they never did. And so, yes, I submit that the statute and the legislative history is very clear that it is the Bankruptcy Court that makes the decision as to where the case should proceed. Frankly, if the case is closed, most Bankruptcy Courts don't want to see something on their docket and they won't take the position that it comes back to them. But this is not that case. This is also a case where the claims at issue are fundamental to this bankruptcy. This is 80 percent of Ms. Gerbel's liabilities. These claims are the reason that she filed, to obtain a determination that they are dischargeable. What do you say to your adversary's argument that it would wreak havoc to allow the taxpayer to force the government to conduct an investigation in a particular case much earlier than the limitations period afforded it? I would respond as follows. You're dealing with a population of poor people. Sometimes. Yes, sometimes. But in this particular case, this is a no-asset debtor. You don't pick fights as a no-asset debtor unless you absolutely have to. And with respect to the burden on the government, nothing unfair is happening to the IRS here. That complaint in the Bankruptcy Court subjected Ms. Gerbel to discovery. These claims are five to 15 years old. If there was any action taken that would justify non-dischargeability, that action has already happened. And in terms of some burden on the IRS, this actually isn't a burden. It's an opportunity to determine whether or not this prohibited behavior actually occurred. But stepping back, and I'm just echoing my colleague, and I understand your arguments about this particular case, but don't you create a rule that if a debtor who might believe that they might be subject to a fraud investigation, perhaps in the future, can force the IRS to at that moment come forward with evidence of fraud that it might not at that point have? So isn't that a rule that the policy implications, and I realize this is not the first case in but it seems like a pronouncement from us that the 523A1C exception can be the subject of an adversarial proceeding before a discharge would upset the balance that the tax code seems to make about statute of limitations and when the IRS must act. To be straightforward, yes, it does. And that's the decision Congress made when it enacted the statute. It said we don't want debtors hanging out waiting for the ax to fall from the IRS. That's in the statute. It was in the statute before 1978. All of the provisions of the previous statute, they're in the bankruptcy code. They're not in one neat little place. The jurisdiction is in 28 U.S.C. 1334. The power to render judgment is in 106A213, which are more than just a waiver of sovereign immunity. It parts the language of 106 of the code. A1 is the waiver of sovereign immunity, and A2 and A3 are explicit grants of power. It used to be in old section 17. Bankruptcy lawyers do this. That's a section of the Bankruptcy Act of 1898. It was codified at U.S.C. section 11 U.S.C. 35. And it's included in Appendix, in ADD 4 and ADD 5 of our brief. Can you help me understand practically what it would mean for your client to have to make arguments in the IRS suit as to why the debt shouldn't be reduced to judgment? How that is different from what you would be arguing in the adversarial proceeding in urging that the tax debts be dischargeable? What's the advantage or disadvantage to you of one proceeding over the other? Well, Your Honor, we brought, my co-counsel brought the adversary proceeding in bankruptcy court, obtained a decision on ripeness and an amended complaint in bankruptcy court. That was then appealed to the district court, which certified it to this court. I'm just trying to understand from a debtor's perspective, why do you care that you're making your arguments in an adversarial proceeding rather than an action to reduce the debt to  We care because the issue of dischargeability, one, is one that bankruptcy courts deal with all the time. And two, the bankruptcy court is seized with the documents providing information for the rest of the case. So it's a preference for the forum. It's not that certain arguments are going to be available to you in one and not the other? That is correct. Preference for the forum. Okay. It's not. In fairness, Judge Radley, they are trying to choose a forum. We just filed a proceeding of bankruptcy court, which the rules and the statute explicitly allow us to do. They sought to change the forum. Well, the rules and the statutes also allow them, if you haven't filed an adversary proceeding, to initiate a proceeding in the district court to reduce the debt to judgment. No? That is correct. And Section 524A2 gives the bankruptcy court on a case that has not yet been closed the power to say that's mine. And that's what Congress wanted to happen. That's in the statute. That's in the legislative history. And, again, as a systemic matter, okay, again, we didn't pick the forum fight. The IRS did. As a systemic matter, what's really going on here is that a debtor like Ms. Goebel writes a check to a solo practitioner to get her through the bankruptcy case, which includes the discharge of tax claims. And the IRS is saying, no, we want her to wait. Years from now, her lawyer's gone. She picked the fight when she had the ability to do so. If you had gone forward with the adversarial proceeding and the government wanted to appeal an adverse decision, it would be to the district court? Yes. Putting you right where the IRS has put you in its reduce debts to judgment action. I only ask this because since you said the main reason you want this or the only reason you want this is because you prefer the forum, you're going to wind up in the district court eventually anyway, aren't you? On appeal, yes, but that's after the record has been made in the bankruptcy court. And I would respect reduce to judgment isn't really the right way to look at this. Ms. Goebel has not disputed the amount that she owes. She disputes only whether or not it's dischargeable. So viewing the IRS proceeding as an attempt to reduce the claim to judgment, that's really not relevant. The only thing that's relevant is whether or not it's dischargeable. And that's something bankruptcy courts, A, deal with all the time and B, can consult a record of the entire bankruptcy case, which the district court, if the IRS brings an adversary in the district court, does not have the same access to. We'll hear rebuttal. Thank you. Thank you, Your Honor. I need to quickly correct some mistakes. Can you address the reverse of the same question? Why does the IRS care that it's in the district court on a case to reduce to judgment rather than in an adversarial proceeding opposing discharge? There are actually several reasons for that. The statute of limitations is not told by a declaratory suit in the bankruptcy court. We're running out of time. One year, I believe, in this case was already expired. And we have to bring the suit to judgment within 10 years of assessment, told by the bankruptcy, admittedly. So that extends the time a little bit. So we have time right after a bankruptcy to bring it. Second reason is we do not believe that we can get a jury trial and a declaratory judgment in the district court. We believe we can in the bankruptcy court. We believe we can in the district court. And those are the two main reasons why to do it. And we often do, particularly with willful cases, ask for a jury, as we did in this case, in the district court case. There's a couple of errors my adversary has made about the statute. So he says 524 now makes it exclusive to the bankruptcy court to decide this while the case was open. Well, actually, there's been a major change in that effect in 1978. Old Section 17c4 expressly said that a bankruptcy court could enjoin a district court pending a determination of dischargeability elsewhere. So it was no longer the first to file. That was removed in 1978. That does not exist. And instead, 524A enjoins only discharge debts in most courts, including this one. And I'll cite a case in a moment, has interpreted that to mean that you're not violating the discharge by going in and seeking a judgment and claiming non-dischargeability in another court. That case is Massa. It's 187, Fed Second, 292. It's not in our briefs. There's actually a lower court opinion in that that I think is a little bit better articulated. It's 217 BR 412 at 421. And it basically says that as long as the person has not yet been, as long as there's not been a determination of dischargeability, it is proper to go forward in a state court, for example. I think Massa was a state court that was involved. But we do that, we do this in the federal district court. So that's just, you know, an error. The legislative history on which court will decide, that's referring to whether the tax court, because there's an automatic stay, stops a tax court proceeding, and that's very clearly gives the bankruptcy court the decision whether to determine the amount of the tax in the bankruptcy court or let it be done in the tax court by lifting the stay. It has nothing to do with dischargeability in that part of the legislative history. That's in the legislative statements. The no-asset debtor argument that was made, you can look at the statistics. Ninety percent of Chapter 7 cases are no-asset cases. The IRS, this is not in the record, but I happen to know they file claims in less than 50 percent of those. And the amount, the times that they raise willful avoidance are exceedingly rare. So it just doesn't come up in most cases. The notion that 5 to 15 years old, that this is the time that we're investigating, not true, because willful payment avoidance can go right up until the day before bankruptcy. For example, if you fraudulently transfer your assets, which I'm not accusing them of doing, by the way, but if you fraudulently transfer your assets a half a year before bankruptcy to your children, that's the willful, that pulls in willful evasion right in the last year before bankruptcy. As far as forum shopping goes, the Supreme Court's case in Taggart is very instructive on this very recently. The Taggart decision in the Supreme Court, you know, basically pointed out that if you made creditors seek their own declaratory judgments, because Taggart was a private case, no, it wasn't a tax case. If you make them seek their own declaratory judgments in the bankruptcy court, you're shifting all this litigation from the state courts to the bankruptcy courts when some of it might never come up, they pointed out. You know, it might never be raised. But more importantly, that's a kind of forum shopping, is it preemptively before anyone has a dispute locks into the bankruptcy court the jurisdiction. So I would check out, you know, Taggart on that. Finally, the other point made was that, you know, Mrs. Goebel has to worry about it being years from now. That's not realistic. The IRS has stayed from enforcing its debt during the bankruptcy. After the bankruptcy's over, they're either going to do an investigation right away and decide to raise this or they're never going to do it. After years, no one's going to do this unless, and there is one exception to that, unless they find fraud on the return. And that would just be outrageous to cut that off before the IRS is, when they're supposed to have the statute of limitations for that. So those are my responses on rebuttal. Thank you very much. MS. GOEBEL. Thank you both. Very helpful. And we'll take a matter under advisement.  Thank you very much.